# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KIMBERLY WASHCO,                    :          CIVIL ACTION
                                    :
                   Plaintiff,       :          NO.  04-5822
                                    :
        v.                          :
                                    :
FEDERAL EXPRESS CORPORATION,        :
                                    :
                   Defendant.       :


## MEMORANDUM

BUCKWALTER, S.J.                                          November 28, 2005

Presently before the Court are Defendant's Motion for Summary Judgment

(Docket No. 12), Plaintiff's Reply (Docket No. 13), and Defendant's Reply (Docket No. 15).

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff was employed by Defendant from February 20, 1992 until May 6, 2003.

Beginning in June 1993, and up until the date of Plaintiff's termination, Plaintiff was consistently

late for work.  During the course of her employment with Defendant, Plaintiff received six

performance reminder letters.[1]  At the direction of Plaintiff's manager, Ms. Dawn Pegram,

Plaintiff submitted several daily planners and performance improvement plans in order to

improve her punctuality.  In 1998, Ms. Pegram created a later start time for Plaintiff to help her

report to work on time.  Even after adjusting Plaintiff's start time, Plaintiff continued to report to

work late.

---

[1].  Plaintiff received performance reminder letters on: December 2, 1993; March 29, 1994; September 17, 1998; February 28, 2000; May 16, 2002; and, January 22, 2003.

On January 13, 2003, Plaintiff participated in an internal investigation regarding a complaint of racial discrimination filed by another employee, Mr. Wayne Moses.  The interview was conducted by Mr. Darcel Caldwell, a Personnel Representative, and Ms. Debra Stewart, Managing Director.  According to Plaintiff, Mr. Caldwell and Ms. Stewart asked Plaintiff about the conduct of Mr. Miguel Acosta, who was both Mr. Moses's and Plaintiff's supervisor. Plaintiff claims that during the interview she stated that Mr. Acosta treated Mr. Moses differently than other similarly situated employees.  (Pl.'s Reply to Def.'s Mot. Summ. J. Ex. A at 141-42.) In a deposition, Mr. Acosta stated that he knew that Plaintiff was interviewed in connection with Mr. Moses's complaint of discrimination, but that he was not informed as to the substance of Plaintiff's statements.  (Pl.'s Reply to Def.'s Mot. Summ. J. Ex. B at 13-14.)

Plaintiff contends that shortly after the interview, on January 20, 2003, Mr. Acosta transferred her to a new location.  According to Plaintiff, Mr. Acosta told Plaintiff:  "I don't want you around here with the Wayne thing heating up," id. at 143, and "with the Wayne thing heating up I don't want you involved [in the investigation] more than you already are."  (Id. at 151-52.) Plaintiff also claims that after the interview, Mr. Acosta denied her an opportunity to apply for a promotion to the position of International Document Agent.  (Id. at 145.)

Nine days after Plaintiff participated in the internal investigation regarding Mr. Moses's complaint, on January 22, 2003, Plaintiff received another performance reminder letter.[2] This performance letter prompted a "decision day."  According to Defendant's employee handbook, a decision day is "[a] day off with pay granted to the employee to determine whether

---

2.  Plaintiff reported late to work on: 8/29/02; 9/10/02; 11/14/02; 12/10/02; 12/11/02; and, 1/14/03.  In addition, Plaintiff did not punch in on 12/18/02 and 1/8/03.

or not he desires to remain in the employment" of Defendant.  (Def.'s Mot. Summ. J. Ex. 2 at

87.)  A decision day is "normally warranted when an employee fails to show improvement."  Id.

Decision days are appropriate after an employee has received two deficiency notifications, and

the last notification was a performance reminder.  Plaintiff appealed Defendant's disciplinary

action through Defendant's internal grievance system.  Both the performance reminder letter and

the decision day were upheld.

Defendant's employee handbook states that "termination normally results upon

receipt of . . . three performance reminders, or a combination of any type of notification

(including warning letters for misconduct) totaling 3 within a 12-month period."  (Id. at 88.)  The

January 2003 performance letter was Plaintiff's second performance letter within a twelve month

period,[3] and therefore, under the terms of Defendant's employee handbook, if Plaintiff received

one more performance letter within the same twelve month period, Plaintiff would be subject to

termination.  The January 2003 performance letter stated that: "it is critical that you [Plaintiff]

clearly understand any additional notification regarding Performance and/or Conduct within a 12

month period, can result in your termination."  (Def.'s Mot. Summ. J. Ex. 14 at 1.)  In a

deposition, Plaintiff stated that after receiving the January 2003 performance letter, she was

aware that she had two deficiency notifications within a twelve month period and that the next

deficiency notification she received could lead to termination.  (Def.'s Mot. Summ. J. Ex. 1 at

123-24.)

Several weeks later, in February 2003, Plaintiff's husband, John Washco, who

was also employed by Defendant, filed an internal grievance.  Mr. Washco's complaint alleged

---

3.  Plaintiff previously received a performance reminder letter on May 16, 2002.

that he was subjected to unlawful discrimination on the basis of disability, sex, and in retaliation for participating in another employee's internal investigation.  (Pl.'s Compl. ¶ 16.)

On May 6, 2003, Plaintiff received a Performance Improvement Reminder for Punctuality.[4]  This was Plaintiff's third performance deficiency within a twelve month time frame.  That same day, Plaintiff's employment was terminated.   Plaintiff then filed an internal grievance regarding her termination.  Defendant's decision to terminate Plaintiff's employment was upheld at all three steps of Defendant's internal grievance system.

Plaintiff now brings this action for an award of damages, declaratory and injunctive relief, and attorneys' fees under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Title VII") and the Pennsylvania Human Resources Act, 43 P.S. § 951 et seq. ("PHRA").  Plaintiff alleges that she was terminated in retaliation for her statements made during the internal investigation and because of her association with her husband.

## II.  SUMMARY JUDGMENT

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Since a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

---

4.  After receiving the January 2003 performance letter, Plaintiff was late for work on March 17, 2003 and May 6, 2003.  In addition, Plaintiff did not punch in her time on May 6, 2003.  (Def.'s Mot. Summ. J. Ex. 15 at 1.)

4

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## III.  DISCUSSION

### A.     Prima Facie Retaliation Claim under Title VII and the PHRA

When a plaintiff does not possess direct evidence, the case must be developed under the "pretext" analysis which was developed under the McDonnell Douglas line of cases. Johnson v. E. I. DuPont De Nemours & Co., 60 F.Supp.2d 289, 293 - 94 (D. Del. 1999). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court set forth a special scheme for structuring the presentation of evidence in discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq*. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). The McDonnell Douglas scheme is a three step process. First, the plaintiff is required to set forth sufficient evidence to establish a *prime facie* case. To establish a *prima facie* case of Title VII retaliation, "a plaintiff must show: (1) that he engaged in protected conduct; (2) that he was subjected to an adverse employment action subsequent to such activity; and (3) that a causal link existed between the protected activity and the adverse action." Barber v. CSX Distribution Serv., 68 F.3d 694, 701 (3d Cir. 1995).

Once the plaintiff has establish a *prime facie* claim, the second step in the McDonnell Douglas scheme shifts the burden of production to the defendant. The defendant has the burden to produce evidence that is sufficient, if believed, to support a finding that it had a

legitimate, nondiscriminatory reason for the discharge. <u>Keller</u>, 130 F.3d at 1108 (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07 (1993)).  Summary judgment should be granted in favor of the plaintiff if the defendant is not able to satisfy this burden.  <u>Id.</u>

Finally, <u>McDonnell Douglas</u> shifts the burden back upon the plaintiff.  "The plaintiff may then survive summary judgment or judgment as a matter of law by submitting evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Keller</u>, 130 F.3d at 1109 (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994)).  This third step is commonly referred to as the <u>Fuentes</u> test, which is broken down into two prongs.  <u>Id.</u>

Under the first prong of the <u>Fuentes</u> test, a plaintiff may survive summary judgment by "offering evidence from which a fact finder could reasonably . . . disbelieve the employer's articulated legitimate reasons."  <u>Keller</u>, 130 F.3d at 1108 (quoting <u>Fuentes</u>, 32 F.3d at 764). The Third Circuit has explained the plaintiff's burden as follows:

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.  Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence.

<u>Keller</u>, 130 F.3d at 1108 - 09 (quoting <u>Fuentes</u>, 32 F.3d at 765).  Thus, "the question is not whether the employer made the best, or even a sound, business decision; it is whether the real

6

reason is discrimination." Id. at 1109 (citing Carson v. Bethlehem Steel Corp., 83 F.3d 157, 159 (7th Cir. 1996)).

Under the second prong of the Fuentes test, a plaintiff may survive a motion for summary judgment by identifying evidence in the record that "allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. at 1111 (quoting Fuentes, 32 F.2d at 762).  In order to satisfy this prong, the plaintiff must identify evidence which "could reasonably be viewed as sufficient to prove by a preponderance of the evidence that age was a determinative cause of [the plaintiff's] subsequent termination." Id. at 1112.

Claims brought under Title VII and the PHRA are analyzed under the same standards.  Harley v. McCoach, 928 F. Supp. 533, 538 (E.D. Pa. 1996).

**B.**     **Prima Facie Case**

**1.**     **Protected Activity**

To establish a *prima facie* claim, Plaintiff must establish that she engaged in a protected activity under Title VII.   Title VII's anti-retaliation provision is divided into two clauses, the opposition clause and the participation clause.[5]  The opposition clause  makes it unlawful "for an employer to discriminate against any of his employees or applicants . . . because he has opposed any practice made an unlawful employment practice by" Title VII.   42 U.S.C. §

---

5.  Similarly, the PHRA, 43 Pa. Cons. Stat. Ann. § 995(d), provides that:

> It shall be an unlawful discriminatory practice . . . for any . . . employer . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

2000e-3.  The participation clause makes it unlawful for an employer to discriminate against any employee or applicant  "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  Id.

Plaintiff alleges that she engaged in two protected activities: (1) during the course of an internal investigation, Plaintiff accused her supervisor of engaging in racial discrimination; and, (2) Plaintiff associated with her husband, who was also employed by Defendant and filed an internal complaint of discrimination against Defendant.

### a.  Defendant's Internal Investigation

The Court will first examine whether Plaintiff's statements made during an internal investigation are a protected activity under Title VII.  Plaintiff argues that her statements are protected under both the participation clause and the opposition clause.  With regard to the participation clause, Plaintiff argues that Plaintiff was required to participate in Defendant's internal investigation and that Congress intended such activity to be covered by Title VII.

The Sixth and Eleventh Circuits have found that participation in proceedings and activities "which occur in conjunction with or after the filing of a formal charge with the EEOC" is considered a protected activity under Title VII, but that "participat[ion] in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC" is not considered a protected activity under Title VII.  Equal Employment Opportunity Comm'n v. Total Sys. Serv., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000).  See also Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1313 (6th Cir. 1989) (holding that "the instigation of proceedings leading to the filing of a complaint or a charge . . . is a prerequisite to protection under the participation clause" and that  "any activity by the employee prior to the instigation of

8

statutory proceedings is to be considered pursuant to the opposition clause").  Courts in the

United States District Court for the Eastern District of Pennsylvania have followed this authority.

See Wychock v. Coordinated Health Sys., No. 01-3873, 2003 U.S. Dist. LEXIS 3376, at * 13-14

(Mar. 4, 2003) (participating in an employer's internal investigation that focused on an

employee's breach of confidentiality and that did not address any alleged acts of discrimination is

not a protected activity under Title VII); Tuthill v. Consol. Rail Corp., No. 96-6868, 1997 U.S.

Dist. LEXIS, at *4 (E.D. Pa. Aug. 26, 1997) (holding that employees' participation in an internal

investigation after a co-worker alleged sexual harassment is not participation in a protected

activity under Title VII); Russell v. Strick Corp., No. 97-806, 1997 U.S. Dist. LEXIS 9562, at

*10 (E.D. Pa. July 19, 1997) (testifying on behalf of a fellow employee at a workers'

compensation hearing regarding racial discrimination alleged by that employee is not

participation in a protected activity under Title VII or the PHRA).  Therefore, the Court finds that

Plaintiff's participation in Defendant's internal investigation is not considered a protected

activity under the participation clause of Title VII or the PHRA because at the time of the

investigation no formal charge had been filed with the EEOC.

       With regard to the opposition clause, Plaintiff argues that her complaints about

racial discrimination by Mr. Acosta during the internal investigation is protected "opposition"

under Title VII and the PHRA.  In Barber v. CSX Distrib. Serv., 69 F.3d 694, 702 (3d Cir. 1995),

the Third Circuit Court of Appeals held that a case-specific inquiry is necessary to determine

whether conduct rises to the level of  "opposition" under Title VII.  While the "participation"

clause narrowly requires participation in a Title VII investigation, proceeding, or hearing, the

"opposition" clause does not require "a formal letter of complaint to an employer or the EEOC as

the only acceptable indicia of the requisite 'protected conduct.'"  Id.  Courts should analyze the

"message" conveyed and "not the medium of conveyance."  Id.  The Third Circuit recognizes

that "informal protests of discriminatory employment practices, including making complaints to

management, writing critical letters to customers, protesting against discrimination by industry or

society in general, and expressing support of co-workers who have filed formal charges" are

considered protected opposition.  Id.  (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209

(2d Cir. 1990)).  See also Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d

Cir. 2001) (holding that a college professor's written letters to the college president complaining

of religious discrimination and written complaint to the college's Affirmative Action Officer

constituted opposition under Title VII).

   The facts of the present case are similar to those before the district court in

Russell.  In Russell, the plaintiff testified at another employee's workers' compensation hearing

regarding racial discrimination directed at that employee.  U.S. Dist. LEXIS at *10.  The district

court found that the plaintiff's testimony did not qualify as protected participation under Title

VII, because a workers' compensation hearing is not an investigation, proceeding, or hearing

under Title VII or the PHRA.  Id.  However, following Barber, the district court found that the

plaintiff did engage in protected opposition under Title VII because the plaintiff's testimony

concerned racial discrimination by plaintiff's employer.  Id. at *13.

   In the present case, like Russell, Plaintiff made statements regarding racial

discrimination.  Although Plaintiff's participation in Defendant's internal investigation is not

considered protected participation, analogous to Russell, Plaintiff's statements are considered

protected opposition under Title VII and the PHRA.

**b.  Association with John Washco**

The Court will next examine whether Plaintiff's association with her husband, John Washco, is a protected activity under Title VII and the PHRA.  The Third Circuit Court of Appeals directly addressed whether a plaintiff can bring a third-party retaliation claim under Title VII in Fogelman v. Mercy Hosp., Inc., 283 F.3d 561 (3d Cir. 2002).  In Fogelman, the Third Circuit held that the anti-retaliation provision of Title VII[6] only prohibits retaliation against the actual person who engaged in the protected activity.  Id. at 567-70.  Therefore, in Fogelman, the Third Circuit affirmed summary judgment in favor of the defendant employer where a son brought a retaliation claim alleging that he was fired because his father, also employed by the defendant, sued the defendant for age and disability discrimination.  Id. at 564.  The court held that the son could not establish a prima facie claim of retaliation where only the father, and not the son, engaged in a protected activity.  Id.  Similarly, in the present case, Plaintiff's husband filed an internal grievance alleging discrimination, and Plaintiff  is attempting to bring a claim based on her husband's protected activity.  Following Fogelman, Plaintiff cannot bring a retaliation claim based on any alleged protected activity of her husband.

**2.      Adverse Employment Action**

The second element of a Title VII retaliation claim is an adverse employment action.  Three adverse employment actions are at issue in this case: (1) Plaintiff's transfer; (2)

---

6.   The claim in Fogelman was actually brought under the anti-retaliation provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA").  283 F.3d at 564.  However, the Third Circuit noted that, "[b]ecause the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, . . . precedent interpreting any one of these statutes is equally relevant to interpretation of the others."  Id. at 567.

Mr. Acosta's alleged denial of Plaintiff's opportunity to apply for a promotion to the position of International Document Agent; and, (3) Plaintiff's discharge.

Refusal to hire, discharge, and conduct that alters an employee's "'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affect his [or her] status as an employee'" are considered "adverse employment actions" under Title VII. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (quoting 42 U.S.C. § 2000e-2(a)).

### a. Transfer

The Court will first examine whether Plaintiff's transfer was an adverse employment action. Defendant argues that a transfer without a reduction in pay or benefits is not an adverse employment action. However, the Third Circuit recognizes that "a transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action." Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994). In cases where a plaintiff has been transferred, but has not experienced a loss of pay or benefits, the plaintiff can survive summary judgment by alleging facts that make the transfer adverse in some other way.

For example, in Torre, the plaintiff was transferred to a newly created position, and just one month after the transfer, plaintiff's employment was terminated as a part of a reduction in force. Id. at 828-29. Although the new position offered the same pay, the plaintiff claimed that the transfer was a "'subterfuge to . . . [a] dead-end position from which he could be fired at a more propitious – and seemingly innocent – moment." Id. at 828. The Third Circuit affirmed the district court's determination that a jury could find that the plaintiff's transfer was an adverse employment action. Id. at 831 n.7.

Similarly, in Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 115-16 (3d Cir. 1996), the Third Circuit held that a material issue of fact existed as to whether a police officer's "temporary" reassignment from the detective bureau to road patrol after the police officer filed a complaint with the EEOC was an adverse job action, even though neither the police officer's rank nor his pay were decreased as a result of the reassignment. The court found that summary judgment was inappropriate given that the police officer argued that the road patrol assignment was less desirable than that of the detective bureau and because the "temporary" reassignment lasted over one year. Id.[7]

By contrast, in Williams v. Bristol-Myers Squibb Co., 85 F.3d 270 (7th Cir. 1996), the Seventh Circuit held that a plaintiff, who was a salesperson for a drug manufacturer, failed to demonstrate that a lateral transfer was an adverse employment action when the plaintiff's base pay and commission rate remained the same after the transfer. Id. at 274. The plaintiff claimed that it would take him time to build the same sales level at his new position that he had reached in his previous position. Id. at 272. Because his volume of sales decreased as a result of the transfer, his earnings from sales commissions also decreased. Id. Therefore, the plaintiff argued that the indirect effect of the transfer on his commission earnings constituted a materially adverse employment action. Id. at 274. The Williams court noted that the plaintiff's commission

_____

7. A recent Third Circuit holding cited in Plaintiff's reply brief, Zelinski v. Pennsylvania State Police, 108 Fed. Appx. 700 (3d Cir. 2004), is also relevant as to whether Plaintiff's transfer should be considered an adverse employment action. In Zelinski, the plaintiff was a state trooper who was transferred from a specialized drug investigation to a patrol unit. Id. at 702, 705. Although the plaintiff did not lose pay or rank as a result of the transfer, the Third Circuit affirmed the district court's determination that the plaintiff survived summary judgment on this ground. Neither the Third Circuit's opinion nor the district court's opinion discusses in detail the rationale for this holding. This court infers that the patrol unit position was less prestigious than the specialized drug investigation unit and that the plaintiff and her co-workers would have deemed such a move to be a demotion.

13

income was only a small fraction of the plaintiff's total income, and went on to hold that to "treat [the plaintiff's] transfer as a materially adverse employment action would bring virtually every lateral transfer within the reach of . . .[federal employment discrimination laws] which the courts thus far have refused to do." Id. The court noted that the lateral transfer would have been an adverse employment action if the transfer would have resulted in a cut in the commission rate or a cut in base pay not offset by an increase in some other form of compensation. Id.

       In the present case, at the time that Plaintiff was interviewed during the internal investigation of Mr. Moses's complaint, Plaintiff was "temporarily" working as Mr. Acosta's administrative assistant. Even though the assignment was temporary, Plaintiff had been in that position for two years. (Pl.'s Reply Def.'s Mot. Summ. J. Ex. A at 143.) According to Plaintiff, she was moved from that position one week after the interview took place, even though Mr. Acosta's new administrative assistant did not begin work until several months later. (Id. at 144.) Plaintiff perceived the transfer as punishment for participating in the internal investigation. (Id. at 153.) Plaintiff admits that she did not suffer a reduction in pay or benefits as a result of the transfer. (Id. at 153-54.)

       Based on these facts, the Court finds that Plaintiff has failed to allege any information that would make the transfer in this case adverse. Although courts have held that a transfer *may* be considered an adverse employment action, to survive summary judgment, a plaintiff must allege some facts demonstrating that the transfer is an *adverse* transfer. See, e.g., Williams, 85 F.3d at 274. The Seventh Circuit has held that "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Id. at 274. As the holdings in Torre and Hampton

14

evidence, a plaintiff can survive summary judgment without alleging a reduction in pay or benefits, provided that the plaintiff alleges other facts demonstrating that the transfer was in some way adverse.[8]  In <u>Torre</u>, the plaintiff alleged that the transfer was to a dead-end position and that the transfer and termination were part of the same discriminatory scheme.  42 F.3d at 831 n.7.   In <u>Hampton</u>, the plaintiff alleged that the transfer was a demotion and that the "temporary" transfer lasted over one year.   In the present case, Plaintiff has only alleged that she was transferred to a different position that offered the same pay and benefits.  Plaintiff has not alleged that she was docked in rank or pay, that she perceived the new position to be a demotion, or any other facts that could lead this Court to conclude that the transfer was an adverse transfer.  Under <u>McDonnell Douglas</u>, Plaintiff has the burden of proving a prima facie case.  Even construing all inferences in Plaintiff's favor, the Court cannot find that the transfer in this case was an adverse employment action.

### b.  Promotion to International Document Agent

In her complaint, Plaintiff also argues that she was denied the opportunity to apply for a promotion to the position of International Document Agent, and that this denial was an adverse employment action.  (Pl.'s Compl. ¶ 16.)  However, in a deposition, Plaintiff admitted

---

8.  Similarly, in <u>Collins v. Illinois</u> 830 F.3d 692, 703 (7th Cir. 1987), the Seventh Circuit noted that "an adverse job action is not limited solely to loss or reduction of pay or monetary benefits."  However, even if the transfer did not result in a reduction of pay or benefits, the <u>Collins</u> court implied that the transfer must be in some way adverse, noting that "adverse job action . . . can encompass other forms of adversity."  <u>Id.</u>  For example, the court noted that:

> courts have found adverse job impact, where there was no reduction in salary or benefits, in an employer's moving an employee's office to an undesirable location, transferring an employee to an isolated corner of the workplace, and requiring an employee to relocate her personal files while forbidding her to use the firm's stationary and support services.

<u>Id.</u>

that Mr. Acosta did not deny her the opportunity to apply for that position.[9]  Based on Plaintiff's

own statement, the Court finds that Plaintiff was not denied the opportunity to apply for a

promotion to the International Document Agent position, and therefore, did not suffer an adverse

employment action on this basis.

### c.  Termination

Termination in and of itself is an adverse employment action.  See Ambramson,

260 F.3d at 288.  In Defendant's Motion for Summary Judgment, Defendant admits that "[t]he

adverse employment action at issue in this case is Plaintiff's termination on May 6, 2003."

(Def.'s Mot. Summ. J. 16.)  Therefore, although Plaintiff has not demonstrated that the transfer

nor the alleged denial to apply for a promotion are adverse employment actions, Plaintiff's

discharge does constitute an adverse employment action.

### 3.        Causal Link

The final element of a prima facie retaliation claim is causation between the

protected activity and the adverse employment action.  In the present case, the protected activity

is Plaintiff's participation in Defendant's internal investigation on January 13, 2003 and the

adverse employment action is Plaintiff's discharge on May 6, 2003.

The Third Circuit Court of Appeals decisions are "seemingly split on the question

whether the timing of the allegedly retaliatory conduct can, by itself, support a finding of

causation."  Robinson, 120 F.3d at 1302.  The Third Circuit has decided only one case in which

temporal proximity *alone* was enough to establish causation.  In Jalil v. Avdel Corp., 873 F.2d

---

9.  Defendant's counsel asked Plaintiff: "So Mike Acosta never denied you the opportunity to apply for that Internal
Document Agent position?"  Plaintiff responded, "No."  (Def.'s Mot. Summ. J. Ex. 1 at 150.)

701, 708 (3d Cir. 1989), the plaintiff survived summary judgment where the only evidence of causation was the circumstance that the adverse employment action occurred just two days after the protected activity.

The holding of Jalil appears to be unique to the unusual facts of that case. See Robinson, 120 F.3d at 1302 (stating that "if Jalil is to be interpreted as holding that timing alone can be sufficient, that holding must be confined to [its] unusually suggestive facts").  Most courts in the Third Circuit find that "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 n.9 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)); see also Robinson, 120 F.3d at 1302.  Courts have also stated that timing "is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." Shellenberger, 318 F.3d at 189.  For example, in Shellenberger, the plaintiff survived summary judgment where time difference between the protected activity and the adverse employment action was only ten days.  Unlike the facts of Jalil, the plaintiff in Shellenberger presented evidence of that her superiors made comments regarding her EEOC complaint in close proximity to her discharge.  Therefore, the plaintiff in Shellenberger presented evidence of causation beyond just temporal proximity.

Conversely, the "mere passage of time is not legally conclusive proof against retaliation." Robinson v. SEPTA, 982 F.2d 892, 894 (3d Cir. 1993).  Where a long period of time has passed between the protected activity and the adverse employment action, "a plaintiff can establish a link between his or her protected behavior and subsequent discharge if the

17

employer engaged in a pattern of antagonism in the intervening period." <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920-21 (3d Cir. 1997).

The only adverse employment action in this case is Plaintiff's discharge. Therefore, the relevant time interval is from the date of Plaintiff's protected activity, January 13, 2003, and the date of Plaintiff's termination, May 6, 2003. In the present case, almost five months separates the protected activity and the adverse employment action. District courts have found that time periods as short as two months are not unnecessarily suggestive to demonstrate causation without additional evidence. <u>See</u>, <u>e.g.</u>, <u>Zappan v. PA. Bd. of Prob. & Parole</u>, No. 00-1409, 2003 LEXIS 3140, at *9 (E.D. Pa. Nov. 25, 2003); <u>Pritchett v. Imperial Metal & Chem. Co.</u>, No. 96-0342, 1997 U.S. Dist. LEXIS 13841, at *12 (E.D. Pa. Sept. 8, 1997). Therefore, the Court finds that the five month time difference in this case is not unnecessarily suggestive.

Plaintiff asserts that Defendant engaged in a pattern of retaliatory antagonism during the relevant five month interval. Plaintiff argues that her transfer and Mr. Acosta's alleged denial of the opportunity to apply for a promotion are evidence of antagonistic treatment. As discussed previously, Plaintiff admitted that Mr. Acosta did not deny her the opportunity to apply for the promotion. Plaintiff's admission leaves the transfer as the only alleged antagonism. One act does not constitute a "pattern" of antagonism.

In addition, Plaintiff has presented no evidence to support the finding that her termination resulted from the statements she made during the internal investigation. After Plaintiff's interview and before her employment was terminated, Plaintiff was late for work on two occasions and failed to punch in for work on one occasion. Plaintiff's tardiness warranted a performance improvement letter. Plaintiff had previously received two performance letters

18

within a twelve month period.  The third letter prompted her termination under Defendant's

employee handbook.  Plaintiff asserts that she had a history of lateness and was only fired after

her interview as part of the internal investigation.  Although Plaintiff did have a long history of

lateness, Plaintiff had not received three performance letters within a twelve month period until

her date of termination, and thus her previous problems with lateness had not warranted her

discharge.  Therefore, even viewing the evidence in the light most favorable to Plaintiff, the

Court holds that a reasonable jury could not find a causal link between the protected activity and

the adverse employment action in this case.

      **C.**      **Legitimate, Non-Discriminatory Reason for the Adverse Employment Action**

           After a Plaintiff has demonstrated a prima facie claim for retaliation, the

McDonnell Douglas framework shifts the burden of proof to the defendant to establish that the

defendant had a legitimate, non-discriminatory reason for discharge.  Even if Plaintiff could

demonstrate causation, the Court finds that Defendant did have a legitimate, non-discriminatory

reason for Plaintiff's discharge.  The terms of Defendant's employee handbook clearly dictate

that termination "normally results upon receipt of three unsatisfactory performance reviews, or

three performance reminders, or a combination of any type of notification (including warning

letters for misconduct) totaling 3 within a 12-month period."  (Def.'s Mot. Summ. J. Ex. 2 at 88.)

Plaintiff received three performance reminder letters within a twelve month period.  When

receiving her second performance reminder letter, Plaintiff was specifically warned that she

could be terminated if she received another performance reminder letter within the same twelve-

month period.  Despite this clear warning, Plaintiff was late for work two more times and failed

to punch in another time.  Plaintiff then received her third performance reminder letter and was

19

fired on the same day.  Therefore, Defendant had a legitimate, non-discriminatory reason for Plaintiff's termination.

      **D.**    **The <u>Fuentes</u> Test**

      Because Defendant has successfully set forth a legitimate, non-discriminatory reason for Plaintiff's discharge, the burden now shifts back to the Plaintiff to submit evidence from which a fact finder could reasonably: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  <u>Keller</u>, 130 F.3d at 1109 (citing <u>Fuentes</u>, 32 F.3d at 763).  Plaintiff has not presented any inconsistencies or incoherencies to discredit Defendant's reason for Plaintiff's discharge, nor has Plaintiff presented any evidence from which a fact finder could determine that discrimination more likely than not motivated her discharge.   Therefore, even if Plaintiff could establish causation in this case, Plaintiff could not counter Defendant's legitimate, non-discriminatory reason for Plaintiff's termination.

**IV.  CONCLUSION**

      For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| KIMBERLY WASHCO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  04-5822 |
| | : | |
| v. | : | |
| | : | |
| FEDERAL EXPRESS CORPORATION, | : | |
| | : | |
| Defendant. | : | |


**O R D E R**

        **AND NOW**, this 28th day of November, 2005, upon consideration of Defendant's

Motion for Summary Judgment (Docket No. 12), Plaintiff's Response (Docket No. 13), and

Defendant's Reply (Docket No. 15), it is hereby **ORDERED** that Defendant's Motion is

**GRANTED.**  Judgment is entered in favor of Defendant Federal Express Corporation and

against Plaintiff Kimberly Washco.

        This case is **CLOSED.**


                                        BY THE COURT:


                                        _____

                                          RONALD L. BUCKWALTER, S.J.